(159 App. Div. 171.)

WILLIAMS v. RUTHERFORD REALTY CO.

(Supreme Court, Appellate Division, First Department. November 21, 1913.)

1. PAYMENT (§ 87*)—DURESS—RECOVERY.

A mortgagor who was to receive advances under a mortgage to be used for certain purposes, the balance, "less reasonable fees" for legal services rendered, by attorneys, one of whom was the president of the mortgagee company, to be payable on the mortgagee's approval of the security offered, and who when the mortgage was executed, and after some objection, knowingly and willingly entered into an agreement reciting the mortgage and advances thereon, amounting to $18,935, including $4,000 for the attorney's legal services, and who on demand of payment, including the fee, paid under protest, could not recover that amount as having been paid under duress.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 283–287; Dec. Dig. § 87.*]

2. PAYMENT (§ 89*)—RECOVERY—LACHES.

An inexcusable delay of one year and three months in seeking relief from an agreement by a mortgagor, acknowledging advances, including a fee of $4,000 to the attorneys negotiating the mortgage for legal services, alleged to have been made under duress, would be sufficient to bar a recovery.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 291–296; Dec. Dig. § 89.*]

3. PAYMENT (§ 89*)—RECOVERY—LACHES AS A DEFENSE—LIMITATIONS.

The fact that plaintiff's right of action to recover money alleged to have been paid under duress was not barred by the statute of limitations would not relieve him from the effect of laches.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 291–296; Dec. Dig. § 89.*]

4. MORTGAGES (§ 311*)—DISCHARGE—ACTION FOR DISCHARGE OF RECORD.

A mortgagor disputing the amount due on the mortgage may tender the amount in payment of the mortgage and, if that was in fact the amount due, could commence an action to have the mortgage discharged of record.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 919–929; Dec. Dig. § 311.*]

5. PAYMENT (§ 87*)—RECOVERY—"DURESS."

To constitute "duress" there must be some actual or threatened exercise of power possessed or believed to be possessed by the party exacting or receiving the payment over the person or property of another, for which the latter has no other immediate relief than by making the payment.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 283–287; Dec. Dig. § 87.*

For other definitions, see Words and Phrases, vol. 3, pp. 2268–2278; vol. 8, p. 7645.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. PRINCIPAL AND AGENT (§ 92*)—AGENT.

An account stated may be made by an agent with proper authority as well as by a principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 245, 246, 250–253, 592; Dec. Dig. § 92.*]

7. ACCOUNT STATED (§ 8*)—CONCLUSIVENESS.

An account stated is conclusive upon the parties to it unless impeached by fraud or mistake.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 50–56; Dec. Dig. § 8.*]

8. ACCOUNT STATED (§ 5*)—WHAT CONSTITUTES.

Where a mortgagor as the agent for his wife went over figures and agreed in writing with the mortgagee as to the amount that was due him, there was an account stated.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 16–29; Dec. Dig. § 5.*

For other definitions, see Words and Phrases, vol. 1, pp. 93–98; vol. 8, p. 7561.]

Clarke and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Louise T. Williams against the Rutherford Realty Company to recover moneys claimed to have been paid involuntarily and under duress. From a judgment for $4,477.70 entered upon a verdict, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

See, also, 157 App. Div. 920, 142 N. Y. Supp. 1150.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Wells & Snedeker, of New York City (Morgan J. O'Brien, of New York City, of counsel), for appellant.

Greene, Hurd & Stowell, of New York City (Richard T. Greene, of New York City, of counsel, and John L. Feeny, of New York City, on the brief), for respondent.

INGRAHAM, P. J. This action is brought to recover the sum of $4,340.58, which plaintiff claims she paid to the defendant under duress. Prior to January 1, 1910, the plaintiff or her husband was the owner of certain property on Madison avenue, New York City, upon which there was a mortgage of $160,000, held by the Union Dime Savings Bank, and a second mortgage for $30,000 held by the defendant. Both of these mortgages were due and unpaid, and foreclosure was threatened. The plaintiff or her husband also owned a piece of property at Stamford, Conn., subject to a mortgage for $50,000 on which interest was past due. Plaintiff's husband also owned a manufacturing plant at Bristol, Va., which he valued at $450,000. The husband seems to have been in full control and management of these properties and to have represented his wife in all of the transactions out of which the present controversy arose. The plaintiff's husband was in great need of money to save all of these properties from foreclosure.

On October 13, 1909, he had a mortgage executed by his wife and himself on the Stamford property for $25,000, with the name of the

mortgagee in blank, upon which he endeavored to obtain money. He had also endeavored to obtain a loan on the Bristol property in Virginia, but apparently without success. He applied to a Mr. Wells, of the firm of Wells & Snedecker, attorneys at law, and who was the managing director of the defendant; his partner was its president; his son its treasurer; all the stock of the defendant, however, was not held by Wells & Snedecker. The plaintiff's husband had negotiations with Mr. Wells, the object being to obtain an advance of money to save these various properties of his from foreclosure, and he proposed that Mr. Wells or the defendant should advance enough money to pay the back interest, to be secured by a mortgage on the Stamford property. On January 12, 1910, plaintiff's husband, in a letter to Wells & Snedecker, agreed to give to Wells & Snedecker a mortgage for $35,000 on the Stamford property, out of which their clients were to advance $12,500, to be used as follows: $4,000 and interest thereon to pay the interest to Union Dime Savings Bank on account of Madison avenue property; $900 for interest on the second mortgage; $625 for interest on the Stamford property; and the balance in cash. "The balance of the mortgage, $22,500, less reasonable fees, to be advanced when your clients are satisfied as to the Virginia property and will receive it as security." At the same time a paper was delivered to Mr. Wells signed by plaintiff, dated January 12, 1910, in which she stated that her husband "John T. Williams, is hereby authorized to receipt for the moneys advanced, or to be advanced upon a certain mortgage this date executed by me on the property at Stamford, Conn., and to settle all matters in connection therewith." Thus the original agreement upon which Wells & Snedecker were to procure from their clients the advances upon this $35,000 mortgage was that the balance of the mortgage loan, less reasonable fees, was to be paid when their clients were satisfied with the Virginia property and willing to receive it as security. The reasonable fees of Wells & Snedecker, under this agreement, were to be retained by them for the professional services they rendered to the plaintiff and her husband.

On the same day, January 12, 1910, the plaintiff and her husband executed a conveyance of the Stamford property to the defendant. This conveyance recited that the said John T. Williams, plaintiff's husband, was justly indebted to the said grantee (Rutherford Realty Company) in the sum of $35,000, as evidenced by his promissory note for that amount of even date therewith, payable to the said grantee 90 days after date, for value received with interest at the rate of 6 per cent. per annum, and it contained a condition that, if said note should be well and truly paid according to its tenor, and the said grantors should also pay to said grantee when requested all moneys by it expended for insurance on the aforesaid premises, or any part thereof, then the deed should be void, otherwise to remain in full force and effect. This instrument having been delivered, the defendant made advances in cash of $14,935.24. The last advance was made on May 19, 1910. On that day the plaintiff's husband executed and delivered to Mr. Wells an instrument, which recited the execution and delivery of the mortgage on the Stamford property, and that:

"Whereas various amounts have been advanced thereon, amounting at this date to eighteen thousand nine hundred and thirty-five and 24/100 dollars ($18,935.24) of principal, and two hundred and four and 33/100 dollars ($204.-33) of interest on advances to this date: Now it is agreed, that no further advances shall be made, but that said mortgage shall stand as security for said amounts and interest, and also as collateral security for a certain other mortgage of thirty thousand dollars ($30,000) held by said Rutherford Realty Company on premises Nos. 778 and 780 Madison avenue, in the borough of Manhattan, city of New York, and the said John T. Williams hereby charges the premises described in the mortgage recorded at Stamford with the payment of the said mortgage on Madison avenue."

So that, on that date, the plaintiff's husband agreed that the amount of the advances that had then been made was $18,935.24 and $204.33 of interest due on advances. The plaintiff's husband admitted that he had a talk with Wells & Snedecker with regard to his property in Virginia; that he was to organize a corporation to run that business or to promote through them a corporation to run that property in Virginia. His account of the execution of the agreement of May 19, 1910, was that on that day he saw Mr. Wells and had a conversation with him as to the amount of the fees that his firm would charge for the services rendered to him; that "we talked the matter over, and he then called his stenographer in to dictate the memorandum which I eventually signed. * * * I made some objection. He said, 'It is a question of either getting that $4,000 which we charge for acting as attorneys, or else we shall go ahead and foreclose the mortgage on the property,' the $30,000 mortgage on the Madison avenue property." There seems to have been no other objection or protest to this fee. After the execution of the agreement, on May 19, 1910, the matter remained without further objection or protest on behalf of either plaintiff or her husband, until August 2, 1911, about a year and three months afterwards. On that date Rollins & Rollins wrote a letter to Wells & Snedecker, stating that they were writing in behalf of the plaintiff, the owner of the premises in Stamford, Conn., and asking for a statement giving the dates and amounts of each separate advance making up the total of $18,935.24. In reply to that letter, Wells & Snedecker sent a statement of the advances amounting to $18,935.24 and including the amount of the fee of $4,000 with interest from May 19, 1910, and $204.33 for interest due. This was followed on November 10, 1911, by a letter from the plaintiff to the defendant that stated that:

"The item of $4,000 of May 19, 1910, included in that amount, is not an advancement covered by the said note or mortgage, and that you have no right to exact the payment of the same. If you insist that you will not deliver a release of the said mortgage upon payment of $14,935.24 with interest and insist upon your alleged right to receive the additional $4,000, in order to clear the title and carry out my contracts with third parties, a condition of which is the release of your mortgage, I shall pay the same under protest and under duress, and hereby notify you that for this illegal exaction steps will be promptly taken to hold you responsible in suitable legal proceedings. As you are aware there is not the slightest foundation for any claim on your part that the said $4,000 was advanced to me or to any one on my behalf or with my knowledge, and as you must be aware, there is absolutely no foundation for your contention that the same is due to you and secured by the mortgage in question."

The plaintiff then paid the $18,935.24, and received a satisfaction of the mortgage on the Stamford property, and subsequently brought this action to recover back the $4,000 as money paid under duress.

By the original agreement, Wells & Snedecker were to be advanced their reasonable fees out of the money to be advanced by the defendant and secured by the mortgage. There was evidence of discussions between the plaintiff's husband and the firm of Wells & Snedecker as to the formation of a corporation to take over the Virginia property, and, when in May, 1910, this proposition seems to have been dropped, the plaintiff's husband and Mr. Wells came to an agreement as to the amount of the fee that Wells & Snedecker were to charge for the services they rendered to the plaintiff, and it was then agreed that the amount due under the Stamford mortgage was $18,935.24, and that amount the plaintiff subsequently paid. When the agreement of May 19, 1910, was signed, these parties were acting for themselves. Under the original agreement, when the loan was made, Wells & Snedecker were entitled to their fees, whatever they were. When the loan was made both parties contemplated other proceedings which would require the assistance of counsel.

[1] When the arrangement was finally completed, the amount of Wells & Snedecker's fee was adjusted at $4,000. There was no evidence that that fee was not reasonable, and there is nothing to justify a finding that the adjustment was illegal or one that plaintiff or her husband was justified subsequently in repudiating. After this agreement the situation continued without change for over a year, and the defendant had the right to demand the payment of its second mortgage on the Madison avenue property and the mortgage on the Stamford property also due at that time. When the defendant demanded the payment of this $18,935.24, which included the $4,000 fee, it seems to me that he had a right to make that demand; the agreement of May 19, 1910, being still in force and never having been question. There certainly was on May 19, 1910, a settlement of the accounts between the parties. The charge of $4,000 as the amount of his fee was made by Wells and assented to by plaintiff's husband, who had full authority to represent the plaintiff in relation to Stamford mortgage on behalf of his wife, and, when later defendant demanded that plaintiff pay the amount thus agreed to as a condition of the satisfaction of the mortgage, it had a right to make that demand, and there was certainly a basis for the demand. And it is very easy to say that Mr. Wells was the Rutherford Realty Company; but of that there is no evidence beyond the fact that he was the managing director and transacted its business. But, whether or not that was so, as between Wells & Snedecker and plaintiff's husband, the amount of their fee had been adjusted by an agreement which was knowingly and willingly entered into between Mr. Wells and plaintiff's husband. On the evidence in this case, as it seems to me, that agreement then settled the rights of the parties as between themselves. The plaintiff has brought no action to cancel or set aside the settlement of May 19, 1910. As long as that agreement stands, and certainly that has not been questioned up to the time of the trial,

there was no duress, as I look at it, in requesting the plaintiff or her husband to pay what was due under the agreement.

[2] Moreover, had there been any such duress as is alleged, plaintiff's long and inexcusable delay in seeking relief would be sufficient to bar her recovery in this action. Oregon Pac. R. R. Co. v. Forrest, 128 N. Y. 83, 28 N. E. 137.

[3] The fact that the plaintiff's right to bring any action to enforce her claims was not barred by the statute of limitations does not relieve her from the effect of her delay. Treadwell v. Clark, 190 N. Y. 51, 82 N. E. 505.

The case of Kilpatrick v. Germania Life Ins. Co., 183 N. Y. 163, 75 N. E. 1124, 2 L. R. A. (N. S.) 574, 111 Am. St. Rep. 722, relied upon by the plaintiff, is so entirely unlike this case that it is difficult to see how it can have any bearing. There a mortgage was payable on August 1, 1901, with interest, and contained a provision that after August 28, 1900, and prior to August 1, 1901, the mortgagor could pay the principal and interest, upon condition that $1,000 was paid in addition to the principal and interest. There was default on August 1, 1901, and the mortgagor tried to make some arrangement to prevent foreclosure, but was informed that counsel had been instructed to foreclose, as an action was commenced. Thereafter the mortgagor informed the defendant that he was ready to pay the principal and interest. The defendant's counsel then informed the mortgagor that the defendant had withdrawn the foreclosure action and proposed to sue for the interest only, and that they would not receive the payment of the principal sum due under the bond and mortgage unless the mortgagor paid an additional sum of $1,000. The mortgagor paid the principal sum and interest and $1,000 bonus and protested that the latter payment was an illegal exaction and was money not due the defendant. Here the entire amount of the mortgage was due, and the court held the exaction of an additional $1,000 was without reason. In this case, the amount due had been agreed upon by the parties, and the agreement was not void because it related to the amount due to Wells & Snedecker for services they had rendered. The defendant made no threat, commenced no proceedings to recover the money, and was entirely willing to allow the mortgage to remain. It simply refused to satisfy the mortgage until it received what it claimed was due.

[4] If the plaintiff had disputed the amount due on the mortgage, she had adequate remedy. She could have tendered the amount in payment of the mortgage, and, if the amount tendered was the amount due on the mortgage, the lien was discharged, and she could have commenced an action to have the mortgage discharged of record.

[5] It is elementary that to constitute "duress" there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, for which the latter has no other immediate relief than by making the payment (Radich v. Hutchins, 95 U. S. 210, 24 L. Ed. 409), and of this there was no evidence. I think, therefore, there was no cause of action.

At the end of the testimony the defendant moved to dismiss the complaint or to direct a verdict for the defendant. This motion was denied, and defendant excepted. I think this was error; but, if there was any doubt as to the right of the defendant to have a verdict directed in its favor, there were several requests to charge, which would require a reversal of the judgment.

[6-8] Certainly the defendant was entitled to the charges:

"That an account stated may be made by an agent with proper authority as well as by a principal." And: "That an account stated is conclusive upon the parties to it, unless impeached by fraud or mistake." And: "That fraud or mistake has not been alleged or proved in this action." And: "That if the jury believe that Mr. Williams as the agent for his wife, went over figures and agreed with the defendant as to the amount that was due to it, that this constituted an account stated, and the verdict must be for the defendant."

These requests to charge were refused and the defendant excepted.

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

SCOTT and HOTCHKISS, JJ., concur.

CLARKE, J. (dissenting). In December, 1909, John T. Williams, husband of the plaintiff, was the owner of certain property on Madison avenue, New York City. There was a first mortgage of $160,000 thereon held by the Union Dime Savings Bank and a second mortgage thereon for $30,000 then held by the defendant. The Rutherford Realty Company had its office in the office of Wells & Snedecker. Mr. Snedecker of that firm was its president, Mr. Wells was its managing director, and his son was its treasurer. The interest was in arrears on these two mortgages at that time. Mr. Wells requested additional security for the mortgage held by the defendant and also to secure the payment of $4,000 interest then due on the first mortgage. Mr. Williams stated that he had a large manufacturing plant in Bristol, Va., which was practically free and clear, but Mr. Wells did not then wish to take a mortgage on that.

The plaintiff at that time was the owner in fee simple of property in Stamford, Conn., and Mr. Wells asked Mr. Williams if he could get a mortgage from Mrs. Williams on that property; but Mrs. Williams declined to give a mortgage on that property as additional security for the Madison avenue mortgage. Subsequently Mr. Williams told Mr. Wells that Mrs. Williams would agree to give a mortgage on the Stamford property for enough to pay the interest on the first and second mortgages on the Madison avenue property and the balance to be paid in cash to Mr. Williams, and on the 12th of January, 1910, Mr. Williams signed the following letter, which had been dictated by Mr. Wells:

"Messrs. Wells & Snedeker—Dear Sirs: I agree to give you a mortgage for $35,000 on the Stamford property, out of which your clients are to advance $12,500 to be used as follows: $4,000 and interest thereon to pay interest to Union Dime Savings Bank on account of the Madison avenue property; $900 for interest on the second mortgage; $625 for interest on the Stamford property, and the balance in cash. The balance of the mortgage,

$22,500, less reasonable fees, to be advanced when your clients are satisfied as to the Virginia property and will receive it as security."

On January 12, 1910, plaintiff and her husband executed a mortgage to the Rutherford Realty Company for $35,000 upon the Stamford property, subject to an existing mortgage thereon for $50,000, conditioned as follows:

"The condition of this deed is such that whereas the said John T. Williams is justly indebted to the said grantee in the sum of $35,000, as evidenced by his promissory note of that amount of even date, herewith payable to the said grantee ninety days after date for value received, with interest at the rate of six per cent. per annum: Now, therefore, if said note shall be well and truly paid according to its tenor and the said grantor shall pay to the said grantee when due all moneys expended by it for insurance upon the aforesaid premises or any part thereof, then this deed shall be void, otherwise to remain in full force and effect."

On various dates from January 14 to May 19, 1910, the defendant advanced upon the promissory note referred to $14,935.24. Mr. Williams testified that on May 19th he went to Mr. Wells' office to see if he could get some additional money on this mortgage, and that Mr. Wells said to him:

" 'Now look here, we might as well get this thing settled now, I am going to charge you $4,000.' I made some objection. He said, 'It is a question of either getting that $4,000 which we charge for acting as attorneys. or else we shall go ahead and foreclose the mortgage on the property,' the $30,-000 mortgage on the Madison avenue property. * * * He said this to me before I signed the paper. Wells & Snedeker, as lawyers, never rendered me a bill for services. On the occasion of this interview he did not tell me what he was charging that $4,000 for. * * * They did not say anything about the $4,000 was for getting the Rutherford Realty Company to make this loan. He simply said he was going to charge me $4,000. Q. Did the Rutherford Realty Company pay you $4,000 so that you could pay it to Wells & Snedeker? A. No, sir; they did not. I did not get any more money."

Mr. Wells stated that unless Mr. Williams signed the paper he produced he would not make any further advances. This paper which Mr. Williams signed and acknowledged on said May 19, 1910, after discussion and to obtain the said advance of $2,500, is as follows:

"Whereas John T. Williams and Louise, his wife, executed a certain mortgage to the Rutherford Realty Company affecting property at Stamford, Conn., and recorded in the land record office in Book No. 140, page 214; and, whereas, various amounts having been advanced thereon, amounting at this date to eighteen thousand, nine hundred and thirty-five and 24/100 dollars ($18,935.-24) of principal and two hundred and four and 33/100 ($204.33) dollars of interest on advances to this date: Now it is agreed, that no further advances shall be made but that said mortgage shall stand as security for said amounts and interest, and also as collateral security for a certain other mortgage of thirty thousand ($30,000) dollars held by said Rutherford Realty Company on premises Nos. 778–780 Madison avenue, in the borough of Manhattan, city of New York, and the said John T. Williams hereby charges the premises described in the mortgage recorded at Stamford with the payment of the said mortgage on Madison avenue. Witness the hand and seal of said John T. Williams this 19th day of May, 1910."

After the signing of this paper, Mr. Williams received $2,500, which is included in the amount set forth therein.

On August 2, 1911, Mrs. Williams' attorney wrote Wells & Sne-

decker asking for the dates and amounts of each separate advance making up the total claimed, and on the 7th day of August they sent a statement in writing, the final item thereof being, "May 19th, fees and services on all matters, $4,000."

In November, 1911, Mrs. Williams had arranged for a new and additional $50,000 mortgage on her property in Stamford; but the new mortgagee declined to close the transaction unless the satisfaction piece of the Rutherford Realty Company mortgage was delivered. Under date of the 10th of November, Mrs. Williams wrote to the defendant:

"Gentlemen: With reference to your claim that the sum of $18,935.24 is the amount advanced by you under the terms of the mortgage and the note securing the same covering my property at Stamford, Conn., I beg to advise you that the item of $4,000 of May 19, 1910, included in that amount, is not an advancement covered by the said note or mortgage, and that you have no right to exact the payment of the same. If you insist that you will not deliver a release of the said mortgage upon payment of $14,935.24 with interest, and insist upon your alleged right to receive the additional $4,000, in order to clear the title and carry out my contracts with third parties, a condition of which is the release of your mortgage, I shall pay the same under protest and under duress, and hereby notify you that for this illegal exaction steps will be promptly taken to hold you responsible in suitable legal proceedings. As you are aware, there is not the slightest foundation for any claim on your part that the said $4,000 was advanced to me or to any one on my behalf or with my knowledge, and as you must be aware, there is absolutely no foundation for your contention that the same is due to you and secured by the mortgage in question."

On the 17th of November, 1911, at Mr. Wells' office, Mrs. Williams' attorneys offered Mr. Wells $16,500 in legal tender in satisfaction of the amount claimed to be due under this Stamford mortgage. Mr. Wells declined to take it. Mr. Green said that that was the exact amount due under the agreement and interest. Mr. Wells stated that it was not the right amount; that there was $4,000 additional. Mr. Green then stated that a new loan was being closed on the Stamford property, and that it was necessary for a satisfaction piece to be obtained of the Wells mortgage, and that therefore the $4,000 would be paid under duress and compulsion. Mr. Wells replied that it was justly due. Mr. Green then paid to Mr. Wells the full amount claimed, being $20,840.58. Shortly thereafter this action was instituted to recover the said amount; the summons being dated November 29, 1911.

As shown by the testimony, and as apparent on the face of the letter of January 12th, there was in contemplation a substitution of a mortgage upon Mr. Williams' Virginia property, for the mortgage on his wife's Stamford property under certain circumstances. This substitution was never made. A large part of the moneys advanced by the defendant was expended in the payment of interest, taxes, and the like upon the Madison avenue property, upon which there was a mortgage of $160,000 prior to the defendant's mortgage of $30,000; so that this position of the moneys which defendant advanced was expended for its benefit by bettering its security, evidenced by the second mortgage on said property.

We cannot find what services were rendered which were of the claimed value of $4,000. The only tangible service was the obtaining of the advances of $14,935.24 on this Stamford mortgage. The work, labor, and services of Mr. Wells in persuading himself, as managing director of the defendant, to take the mortgage and advancing the money, hardly seem to have called for such remuneration; nor is $4,000 a reasonable fee or bonus for the obtaining of $14,935.24, especially when interest was paid on said sum and it was amply secured. Mr. Wells claims that his relation to Mr. Williams from the inception of this affair in December, down to the 19th of May, when the last advance was made, was that of attorney and client. If so, the obligation rests upon him to show the fairness of this transaction.

The question presented upon this appeal is whether, under the circumstances disclosed, the payment by Mrs. Williams of the $4,000 for services claimed to have been rendered by Wells & Snedecker as attorneys to her husband down to May 19, 1910, included by them in the amount claimed to be due to the Rutherford Realty Company, of which Mr. Wells was the managing director and Mr. Snedecker the president, upon the mortgage upon her property executed by her to said company, after having made a legal tender of the full amount of the actual moneys advanced with interest thereon, and under a claim of duress and compulsion in order to obtain a satisfaction of said mortgage in order to consummate a larger loan upon the same security which had been negotiated conditioned upon the satisfaction of defendant's mortgage, was such an involuntary payment as in the contemplation of the law can be recovered by action.

In Kilpatrick v. Germania Life Insurance Co., 183 N. Y. 163, 75 N. E. 1124, 2 L. R. A. (N. S.) 574, 111 Am. St. Rep. 722, a mortgage given on the 28th of August, 1899, was payable on August 1, 1901, with interest payable semiannually on February and August 1st. The privilege was accorded the mortgagor of paying the principal sum and interest at any time after August 28, 1900, and prior to August 1, 1901, upon the payment in addition to the principal sum and interest of the further sum of $1,000. The mortgage also contained the usual covenant that upon default in the payment of interest the principal sum should, at the option of the mortgagee, become due and payable immediately. There was default in payment of interest due August 1, 1900. The mortgagor sought to make some arrangement as to the payment of interest, but was informed that counsel had been instructed to foreclose and a summons and complaint in a foreclosure action was served. Thereafter he notified the counsel for the defendant that he would be ready to pay the amount of the bond and mortgage with interest within a day or two and that he had arranged for a new loan on the same premises. Defendant's counsel informed the mortgagor that he was sorry, but his client had withdrawn his foreclosure suit, and it was actually discontinued by an ex parte order and proposed to sue for the interest only, and that they would not receive payment of the principal sum due under the bond and mortgage unless plaintiff paid the additional sum of $1,000. The mortgagor paid the principal, interest, and $1,000 bonus, protesting at the

same time that the latter was an illegal exaction and was money not due the defendant.   The court said:

"The sole question presented is whether the payment of this bonus of $1,-000 was, under the circumstances, voluntary or exacted when the plaintiff was under duress. * * * The plaintiff, in view of the way business is done in giving a new mortgage to pay off the old one, could not wait to make a tender and take legal action and he was not obliged to.  He could submit to the exaction and pay the bonus, and sue to recover it back, because such a payment is not voluntary.  In effect the defendant held plaintiff's property in its grasp through its lien thereon and would not surrender it until the unlawful exaction was complied with.  The payment was made to free the property from the duress as much as if it had been a chattel and the defendant had it in his possession under a pledge, refusing to part with it unless the bonus was paid.  Under these circumstances, the compulsion was illegal, unjust, and oppressive, and the plaintiff, having submitted under protest, had the right to recover, according to the authorities.  The refusal of the defendant to accept the mortgage debt and interest unless the bonus was paid placed the plaintiff in a position where he was compelled to submit to the exaction in order to receive a satisfaction of the defendant's mortgage and secure the money on the new loan which would protect him in the emergency."

It seems to me under that authority, and the cases therein cited, that the well-established rule, that a payment involuntarily made under duress of goods may be recovered, has been extended to cover real estate transactions, and that, under the facts developed in the case at bar, the court was justified in submitting the facts to the jury for them to determine whether, within the definition as given by him, the payment complained of was voluntary or involuntary, and that the jury was justified in finding that the plaintiff was compelled to make a payment not contemplated in the original transaction and for which she was not liable, to free her property from the lien of the mortgage, so that she might consummate the loan which she had negotiated for the purpose of paying off this prior mortgage upon her property.

The judgment and order appealed from should therefore be affirmed, with costs to the respondent.

DOWLING, J., concurs.