Florence E. BACON and Francis G. Bacon, Appellants,

v.

UNITED STATES of America, Appellee.

No. 17236.

United States Court of Appeals Eighth Circuit.

Aug. 21, 1963.

Ted M. Henson, Jr., Poplar Bluff, Mo., for appellants.

Sherman L. Cohn, Atty., Dept. of Justice, Washington, D. C., for appellee. John W. Douglas, Asst. Atty. Gen., Mark R. Joelson, Atty., Dept. of Justice, Washington, D. C., and Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., with him on the brief.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and YOUNG, District Judge.

YOUNG, District Judge.

On September 1, 1960, Frank J. Krouse, an employee of the United States, while driving one of its cars, struck an automobile driven by appellant Florence E. Bacon, wife of appellant Francis G. Bacon. On May 15, 1961, appellant Florence Bacon brought an action for damages against Krouse in the Circuit Court of Butler County, Missouri, seeking $10,000.00 for personal injuries sustained in the collision. On March 6, 1962, this suit was settled by the appellants, Florence and Francis Bacon,[1] and a "Covenant Not to Sue" was entered into with Krouse. This document provides:

"For the sole and only consideration of the payment of Two Thousand Two Hundred Eighty-seven and 80/100 ($2,287.80) Dollars, the receipt of which is hereby jointly and severally acknowledged, we do hereby for ourselves and for each of us and for our respective heirs, executors, administrators, personal representatives and assigns, covenant and agree never to make any further demand or claim or to commence or cause or permit to be prosecuted any further action in law or equity or any proceeding of any description against Frank J. Krouse or Government Employees Insurance Company, on account of any personal injury, disability, loss of services, expense, loss, or damages of any kind that we, or either of us, have sustained or may hereafter sustain in consequence of an accident that occurred on or about September 1, 1960, at approximately 8:15 a. m., near the intersection of Seventh and Vine Streets in the City of Poplar Bluff, County of Butler, State of Missouri.

"It is specifically understood and agreed by the parties hereto that the payment mentioned above includes the sum of Fifty and No/100 ($50.-00) Dollars which represents the deductible amount paid by Francis G. Bacon and Florence E. Bacon under their collision coverage contract with the State Farm Mutual Automobile Insurance Company. Florence E. Bacon and Francis G. Bacon specifically retain their claim for the balance of the damage done to their 1953 Lincoln automobile as a result of the aforementioned accident occurring on September 1, 1960.

"EXHIBIT A

"To procure payment of the said sum, we and each of us do hereby declare that we are each more than twenty-one (21) years of age; that no representations about the nature and extent of the said injuries, disabilities, or damages made by an physician, attorney or agent or any part to whom this covenant extends, nor any representations regarding the nature and extent of legal liability or financial responsibility of any of the parties to whom this covenant extends, have induced us, or either of us, to make this covenant; that in determining the said sum, there has been taken into consideration not only the ascertained injuries, liabilities and damages, but also the possibility that the injuries sustained may be permanent and progressive and recovery therefrom uncertain and indefinite, so that consequences not now anticipated may result from said accident.

"We further agree that this covenant may be pleaded as a defense, counterclaim, or cross-claim to any action or suit brought by us or anyone on our behalf against Frank J. Krouse or Government Employees Insurance Company, or their legal representatives, which arises out of, or may arise out of, said collision.

"We further agree that we will fully indemnify the said Frank J. Krouse and Government Employees Insurance Company from attorneys

---

1. Although Francis Bacon was not a party to the suit in state court, he did enter into the Covenant not to sue.

fees, costs or damages which he or it may sustain by reason of any further action being brought.

"This agreement is not intended as, nor shall it be construed as a release of the United State (sic) of America or any other person or corporation.

"We and each of us understand that the parties to whom this covenant extends admit no liability of any sort by reason of said accident and that the payment of the sum above recited is made to terminate further controversy respecting all claims for damages that we or each of us have heretofore ascertained against, or that we or each of us might hereafter ascertain against Frank J. Krouse or Government Employees Insurance Company, because of the said accident.

"IN WITNESS WHEREOF, we have hereunto set our hands this ...... day of March, 1962.

"/s/  Francis G. Bacon
     "Francis G. Bacon
"/s/  Florence E. Bacon
     "Florence E. Bacon

"Filed in the United States District Court for the Eastern District of Missouri (Southeastern Division) on the 10th day of August, 1962."

Two particular provisions in this instrument should be pointed out here: (1) The covenant stated that the Bacons specifically retained their claim for the balance of the damage done to their automobile;[2]  (2) The sixth paragraph of the document expressly provides that this agreement will not be construed as a release of the United States.

On April 20, 1962, the appellants filed an action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), seeking damages for the injuries sustained as a result of the alleged negligence of the same Frank J. Krouse, an employee of the United States. It was not alleged, nor is it contended, that the United States was in any way negligent, but the appellants sought recovery against it under the doctrine of respondeat superior.

On August 15, 1962, the United States filed a motion for summary judgment. On October 8, 1962, the District Court granted appellee's motion and entered judgment for it. The trial court found that the "Covenant Not to Sue" completely released the employee, Krouse, and that a release of the employee bars a subsequent action against his employer, when the employer's liability could only be based upon respondeat superior. Bacon v. United States, 209 F.Supp. 811 (D.C. E.D.Mo.1962).

These then are the issues: (1) Was this action against the United States based exclusively on the alleged negligence of its employee? (2) Was the employee completely released by the covenant not to sue executed by the appellants? (3) If No. 1 and No. 2 are answered in the affirmative, is the employer, the United States, also relieved of liability?

**(1)**

The first two issues can be answered quickly. As to issue No. 1, there can be no doubt, nor do the appellants make any such contention, that the United States could not have been independently negligent in any way. The only possible cause of action against the appellee would be founded under the doctrine of respondeat superior.

**(2)**

Although paragraph two of the covenant specifically states that the appellants are retaining their claim "for the balance of the damage done to their * *

---

2.  In the collision the Bacon car had been damaged in the sum of $202.16. Francis Bacon had a collision insurance policy with State Farm Mutual Insurance Co. which contained a $50.00 deductible clause. In the settlement resulting in the covenant not to sue the sum of $2,287.-80 paid to the Bacons included the $50.00 which had been deducted from the total damages to their car but not the balance of $152.16 paid by their insurance carrier.

automobile * * *," it becomes obvious from a careful reading of the entire document that they do not in fact retain such a claim. In this regard we adopt the language of the trial court:

> "The problem is that paragraph two contradicts every other relevant paragraph of the instrument. In the first paragraph plaintiffs agree never to make any further demand or claim or to commence or cause to be prosecuted any further action against Frank J. Krouse on account of 'any personal injury, disability, loss of services, expense, loss, or damages of any kind' as a result of the collision. Paragraph three states that in determining the amount of payment, the parties have considered the ascertained injuries, liabilities and damages as well as those unforeseen. Most importantly, paragraph four promises that the covenant may be pleaded as a defense, counterclaim, or cross claim to any action or suit brought against Krouse. Paragraph five promises indemnification for attorneys fees, cost or damages which Krouse may sustain by reason of any further action being brought. Paragraph seven states that no liability is admitted, but the payment is made to terminate further controversy respecting 'all claims for damages that we or each of us have heretofore ascertained against, or that we or each of us might hereafter ascertain' against Krouse because of the accident."

This paragraph may very well mean, as the court below thought: "* * * that plaintiffs have retained the claim for the balance of automobile damage for the purposes of their insurer, State Farm Mutual Automobile Insurance Company."

But there can be no doubt that the instrument, regardless of paragraph two, completely releases Frank J. Krouse of any liability to the appellants. In fact, we feel that the appellants themselves tacitly admit this point. On page 13 of their brief, while arguing that paragraph seven of the covenant did not effect a full release it is said: "But, this paragraph specifically states that the payment to appellants is for the purpose of ending any further controversy respecting all claims of damage *against Krank (Sic) J. Krouse.*" (Emphasis theirs). Certainly this is an admission that the appellants have retained no claim against Krouse.

Now, with issues No. 1 and No. 2 answered in the affirmative, we must turn our attention to issue No. 3, which presents us with a very interesting legal problem.

Appellants are correct in arguing that under Missouri law a release of one of several joint tort-feasors does not release them all. 37 R.S.Mo., § 537.060 (V.A. M.S., 1949 ed.) provides:

> "It shall be lawful for all persons having a claim or cause of action against two or more *joint tort-feasors or wrongdoers* to compound, settle with, and discharge any and every one or more of said joint tort-feasors or wrongdoers for such sum as such person or persons may see fit, and to release him or them from all further liability to such person or persons for such tort or wrong, without impairing the right of such person or persons to demand and collect the balance of said claim or cause of action from the other joint tort-feasors or wrongdoers against whom such person or persons has such claims or cause of action, and not so released." (Emphasis ours).

In New Amsterdam Casualty Co. v. O'Brien, 330 S.W.2d 859 (Mo.1960), the Missouri Supreme Court held that:

> "Under the law of Missouri, the release of one of several joint tort-feasors does not discharge other joint tortfeasors unless the release acknowledges 'full satisfaction', * * * *"

Of course, the injured party can only have one satisfaction for the wrong, "but he can accept a part of that satisfaction from one and release him in full, continuing to hold the others for the balance."

New Amsterdam Casualty Co. v. O'Brien, supra.

However, this does not solve the appellants' problem. The United States and Krouse are not joint tort-feasors; we are confronted with a case where the appellee, United States, can only be liable, if it is liable at all, under the theory of respondeat superior which is not the same as a joint tort-feasor situation. Max v. Spaeth, 349 S.W.2d 1 (Mo.1961).

The Max case grew out of a collision between an automobile operated by the plaintiff and a truck owned by the defendant and driven by the defendant's employee. The plaintiff had earlier sued the employee driver to recover for personal injuries; this suit was settled, and the plaintiff and the employee executed a "stipulation of dismissal", as a result of which the court dismissed the case against the employee with prejudice. The stipulation specifically stated that the plaintiff's cause of action against the employer would remain on the docket without prejudice.

█ A reading of the Max case can leave no doubt that under the Missouri law: "A valid release of a servant from liability for tort operates to release the master." It would seem, then, that a covenant not to sue which *released* the servant would therefore operate to release the master under the authority of Max v. Spaeth, supra. The appellants argue that the Max case is not controlling since it involved a "stipulation of dismissal" which amounted to a full release of the servant. Appellants might also contend that the instrument before the court in the case at bar was not a "release" as formally defined but a "covenant not to sue", and that the two differ materially. However, as the court below found, the mere fact that the instrument is called a "covenant not to sue" does not prevent the parties from entering into an agreement which releases a tort-feasor. Clark v. Union Electric Light and Power Co., 279 Mo. 69, 213 S.W. 851 (1919); see also New Amsterdam Casualty Co. v. O'Brien, supra. Further, the covenant not to sue certainly released Krouse, and

in light of the Missouri law it is unnecessary that we go beyond this point; the full and complete release of the servant releases the master. Max v. Spaeth, supra.

But the appellants also contend that we have not answered their argument that Max is distinguishable; i. e., the Max case is not controlling here since it involves not only a release but also a "dismissal 'with prejudice'". The appellants overlook, however, that the Missouri Court in Max held that a dismissal with prejudice *amounted* to a *release* of the servant and therefore there was also a release of the master.

█ Under the Missouri law this covenant not to sue must be considered a release for the purposes of this discussion since it in fact relieved the appellee's employee from liability to the appellants, and the absolution of an employee through operation of law releases the employer even though appellants attempted to avoid the release of the employer by language contained in the covenant not to sue. Max v. Spaeth, supra; see also Annot., 20 A.L.R.2d 1044 (1951), which sets out the two conflicting rules.

As the Missouri Supreme Court said in Max, the master's liability under the doctrine of respondeat superior is based not on his own misdeeds but those of his servant, and "therefore, when the servant is not liable, the master for whom he was acting at the time should not be liable." It matters little how the servant was released from liability; as long as he is free from harm, it appears to us that his master should also be held blameless.

It should be mentioned that there is a line of federal cases which seems to hold that a covenant not to sue the employee, who is primarily liable for the tort, but expressly retaining the right to bring an action against the United States who is the employer, does not bar a recovery against the said United States. These cases reason that Congress specifically provided in the Act that a release of the United States would release the employee but failed to mention the converse, and

that this silence presents the "obvious inference" that a release of the employee will not release the United States, at least when the injured party specifically retains his rights against the United States. Friday v. United States, 239 F. 2d 701 (9th Cir. 1957); see also United States v. First Security Bank of Utah, 208 F.2d 424, 42 A.L.R.2d 951 (10th Cir. 1953.)

We feel that these cases are clearly distinguishable. In the Friday case the court also found that the United States could have been guilty of independent negligence; this would of course make it a joint tort-feasor and distinguish Friday v. United States with the case at bar, in which the appellee was not a joint tort-feasor.

The Utah Bank case rejects the Government's contention that § 2676 of Title 28 itself, without regard to the law of Utah, impliedly provides that a settlement with the employee would bar a recovery against the United States. The court then held that the law of joint tort-feasors relating to releases and covenants not to sue was applicable to respondeat superior situations in Utah. Such is not the case, however, in Missouri under the Max rule.

■ We do not feel that these cases are in conflict with our holding for we are bound by the law of Missouri. Matland v. United States, 285 F.2d 752 (3rd Cir. 1961); Air Transport Associates v. United States, 221 F.2d 467 (9th Cir. 1955); Rushford v. United States, 204 F.2d 831 (2nd Cir. 1953); Cf. Buchanan v. United States, 305 F.2d 738 (8th Cir. 1962); Annot., 42 A.L.R.2d 960 (1955), and as this court has so often said, the standard of review to be used in determining doubtful questions of state law is whether or not the district court reached a permissible conclusion. The appellants have a weighty burden to discharge before they can establish that the court below failed to reach a permissible conclusion with regard to the law of the state in which it sits. We are convinced that the trial court did reach a permissible conclusion and that appellants have failed

to discharge their burden. See Sears, Roebuck & Co. v. Daniels, 299 F.2d 154 (8th Cir. 1962).

The district court's order granting the appellee's motion for summary judgment will be affirmed.