VILLAGE OF MORRILL, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT, V. ROOSEVELT PUBLIC POWER DISTRICT, A RURAL PUBLIC POWER DISTRICT, APPELLEE.

337 N.W.2d 125

Filed July 29, 1983. No. 82-532.

R. L. Gilbert, for appellant.

Steven C. Smith of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

KRIVOSHA, C.J.

The appellant, Village of Morrill, Nebraska, a municipal corporation (Morrill), appeals from an order entered by the District Court for Scotts Bluff County, Nebraska, dismissing a suit for money had and received, filed by Morrill against Roosevelt Public Power District (Roosevelt), a public power district. We affirm.

Morrill owns and operates an electrical distribution system, purchasing electricity at wholesale and selling it at retail to residents of Morrill and a few farms located near Morrill. Roosevelt also owns and operates an electrical distribution system and sells electricity at retail in the rural areas in Scotts Bluff and adjacent counties. In addition, Roosevelt sells some electricity at wholesale to municipalities such as Morrill which, in turn, resell the electricity. Roosevelt purchases its electricity from Tri-State Generation and Transmission Association, Inc., an association of public power districts located in Colorado, Wyoming, and Nebraska.

Until 1975 Morrill purchased all of its electricity from the U.S. Bureau of Reclamation. Due to increased loads and the unavailability of additional electricity from the bureau, on May 5, 1975, Morrill entered into a contract with Roosevelt for the purchase of supplemental electrical energy. Paragraph 6(a) of the contract provided: "The Buyer shall pay the Seller for supplemental electric service furnished hereunder, to be applied to the monthly billing figures determined pursuant to Article 5

hereof, the monthly rate under which the Seller purchases electric service at wholesale from Tri-State Generation and Transmission Association, Inc. increased by ten percent (10%), which monthly rate is set forth in Tri-State's Schedule A (revised March 22, 1974), attached hereto and made a party [sic] hereof. The Buyer agrees that if at any time the rate under which the Seller purchases electric service at wholesale is modified by Tri-State by a revised or superseding schedule, said revised or superseding schedule shall replace the schedule then in effect hereunder.'' Under this contract the seller was Roosevelt and the buyer was Morrill.

Thereafter, from time to time, Tri-State revised its schedule A and, accordingly, Roosevelt adjusted its charges to Morrill. On July 21, 1976, Tri-State established a schedule of rates for wholesale firm power service for resale at wholesale to non-REA beneficiaries. Morrill was such a non-REA beneficiary customer of Roosevelt, as were three other municipalities in the Roosevelt service area. By reason of the revision, Roosevelt was charged one rate for energy purchased for resale to its retail customers (A-5) and another rate for energy purchased for resale to non-REA act beneficiaries such as Morrill (R-1).

Morrill now argues that the R-1 rate was inapplicable to Morrill and that it should have been charged under the revised schedule A-5 and not the R-1. Morrill further argues that amounts paid by Morrill to Roosevelt under the R-1 rate in excess of those provided for by schedule A-5 should be refunded to Morrill. The basis of Morrill's argument is that under its contract with Roosevelt it was to pay on the basis of a schedule A rate established when the contract was entered into or modified or revised from time to time, and not on the basis of a new schedule derived for non-REA act beneficiaries. Morrill maintains that the R-1 rate is neither a modification nor a revision of the rate previously charged

Morrill but, rather, a "new rate" and therefore not applicable to Morrill.

We believe that the argument is simply without any basis. Clearly the agreement between Roosevelt and Morrill is that Morrill will pay to Roosevelt for energy an amount equal to that charged by Tri-State to Roosevelt, plus an additional 10 percent. Morrill concedes that Tri-State charged Roosevelt for energy supplied to Morrill under the R-1 rate. Morrill's position is that that is Roosevelt's problem and not Morrill's.

Each party to the contract urges us to consider extrinsic evidence in an effort to interpret the contract. We think that is not necessary. The language of the contract is clear and unambiguous. It is a familiar rule of law that a written contract expressed in unambiguous language is not subject to interpretation or construction and the parties' intention must be determined from its contents. *Clemens Mobile Homes, Inc. v. Anderson*, 206 Neb. 58, 291 N.W.2d 238 (1980). Morrill agreed to pay Roosevelt whatever Roosevelt was charged by Tri-State, plus an additional 10 percent. That language is clear and unambiguous. Furthermore, the language of the contract recognized that there would be changes made in the rate schedules.

If Morrill believed that Tri-State's charges to Roosevelt for Morrill's energy were discriminatory or improper, its remedy was to challenge the rate and not sue for money had and received. In *York County Rural Public Power Dist. v. O'Connor*, 172 Neb. 602, 608, 111 N.W.2d 376, 379 (1961), we said: "[T]he reasonableness or unreasonableness of rates charged or action taken by the board of directors of a public power district is a proper matter for judicial examination and review." See, also, *McGinley v. Wheat Belt P.P. Dist.*, 214 Neb. 178, 332 N.W.2d 915 (1983).

A suit for money had and received, on the other hand, is based upon a notion that where one person

has money to which in equity and good conscience another is entitled, the law creates a promise by the former to pay to the latter. See, *Barker v. Wardens & Vestrymen of St. Barnabas Church*, 171 Neb. 574, 106 N.W.2d 858 (1961); *Nebraska State Bank v. Sherlock*, 180 Neb. 772, 145 N.W.2d 573 (1966).

Having conceded that Tri-State charged Roosevelt under R-1 for Morrill's energy and that Roosevelt paid Tri-State pursuant to R-1, until the rate was changed Morrill was obligated to pay as billed. If the rate established by Tri-State under its R-1 was discriminatory, a fact we do not decide, the proper remedy was a suit to challenge the rate and not a suit for money had and received.

The judgment is affirmed.

AFFIRMED.