TIM C. MALLETTE AND DONNA JEAN MALLETTE, APPELLEES, V.
TAYLOR & MARTIN, INC., REAL ESTATE, A NEBRASKA
CORPORATION, APPELLANT.

406 N.W.2d 107

Filed May 15, 1987.   No. 85-645.

James R. Place and Alan M. Thelen of Breeling, Welling, Place & Steier, for appellant.

Neil W. Schilke of Sidner, Svoboda, Schilke, Wiseman, Thomsen & Holtorf, for appellees.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Per Curiam.

The appellant, Taylor & Martin, Inc., Real Estate, a Nebraska corporation, appeals from a jury verdict in the amount of $32,053.50. For reasons more particularly set out hereinafter, we believe that the verdict cannot be sustained, and the judgment entered on the verdict must be set aside and the action dismissed.

The appellees, Tim C. Mallette and Donna Jean Mallette (Mallettes), filed a petition in the district court for Douglas County, Nebraska, consisting of four causes of action. The first cause of action alleged that Taylor & Martin "was party to a real estate listing agreement with Clifford Dean Vanderlinde and Cathy Vanderlinde by the terms of which [Taylor & Martin] agreed to use its efforts to sell the Vanderlinde property located in Cherry County, Nebraska." The petition then alleged that Taylor & Martin solicited an offer from Mallettes to purchase the property. Mallettes alleged that in an effort to induce them to make the offer, Taylor & Martin made certain representations which were untrue and which were made with the intent to deceive Mallettes and induce them to make an offer to purchase the real estate. Among other matters, Mallettes further alleged that a downpayment in the sum of $80,000 was paid to Taylor & Martin as agents. Mallettes then alleged that they later learned of the fraudulent misrepresentations and proceeded to have a prior decree of specific performance obtained by Mallettes against Vanderlindes set aside.

The petition then alleged: "By agreement of Vanderlindes and Mallettes the contract was rescinded. A copy of said assignment and release is attached hereto and made a part hereof." Mallettes further alleged: "The defendant has failed to make payment to plaintiffs in the amount of $27,737.50 which constitutes a portion of the initial $80,000 payment made by the plaintiffs to Vanderlindes." As a result thereof, Mallettes prayed for judgment against Taylor & Martin in the amount of

$27,737.50.

The remaining three causes of action seek to recover further sums allegedly expended by Mallettes for legal fees, travel expenses, and overpayment of rental for pastureland rented by Mallettes from Vanderlindes. The expenditure of these sums was allegedly caused by the statements made by Taylor & Martin to Mallettes.

The agreement, which was attached to the petition and made a part of the petition, alleged that Taylor & Martin "was acting as an agent of Vanderlinde at the time [when the material misrepresentations of fact were made]." The agreement then further provides that:

4. In order to accomplish such restoration the parties agree as follows:

a. The entire amount of $52,262.50 which has been held by the Clerk of the District Court together with accrued interest shall be paid to Mallette;

b. Vanderlinde shall lease a portion of their real estate to Mallette on the terms set forth on a lease to be signed simultaneously with this agreement.

c. Vanderlinde releases any claim to any portion of the payment made by Mallette through Taylor & Martin by reason of the land contract.

. . . .

6. Vanderlinde releases Mallette and Mallette releases Vanderlinde severally and jointly of any and all claims known or unknown, liquidated or unliquidated, and whether arising in tort or contract other than obligations as set forth herein.

7. Each party shall pay their own costs and legal fees.

The $52,262.50 appears to be the difference between the $80,000 initially paid by Mallettes to Taylor & Martin as agent of Vanderlindes and the amount paid by Vanderlindes to Taylor & Martin.

Taylor & Martin has assigned a number of errors as to why the judgment should be set aside. Among those assignments of error is one which we believe to be the threshold question which, if answered in favor of Taylor & Martin, makes all of the other assignments of error moot. That question is whether the

trial court erred in failing to find that the release executed by Mallettes to Vanderlindes likewise released Taylor & Martin from any liability to Mallettes by reason of the sale of the real estate. The district court apparently found that it did not operate to release Taylor & Martin. We believe that the district court was in error and, for that reason, the judgment must be reversed.

There can be no question, nor do the parties contend otherwise, but that the agreement and release executed by and between Mallettes and Vanderlindes was intended to be a complete settlement and release of any dispute between the buyers and the sellers with regard to this property. Moreover, by reason of the agreement and release, the parties acknowledge that Taylor & Martin was acting as agent of the sellers, Vanderlindes, and that therefore there existed a principal-agent relationship between Vanderlindes and Taylor & Martin.

In *Ericksen v. Pearson*, 211 Neb. 466, 319 N.W.2d 76 (1982), we made a careful analysis concerning the question as to whether the release of either the principal *or* the agent thereby released the other, and concluded that it did. Specifically, we observed at 475, 319 N.W.2d at 81:

> The general rule is stated in 76 C.J.S. *Release* § 50 at 689 (1952) as follows: "In a situation where several persons are not actively joint tort-feasors, but one person commits the tort and is primarily liable while the liability of the other person is derivative or secondary, as where it arises under the doctrine of respondeat superior, the releasor's acceptance of satisfaction from one, discharges the other as well, as in the case of master and servant or principal and agent; and it has been held that this is true despite an attempted reservation of rights against the person secondarily liable, since if the rule were otherwise, such person would be liable without having recourse against the person primarily liable, the latter having been released . . . ."

After then referring to an extensive annotation titled " 'Release of (or covenant not to sue) master or principal as affecting liability of servant or agent for tort, or vice versa,' appearing in 92 A.L.R.2d 533 et seq. (1963)," 211 Neb. at 475,

319 N.W.2d at 81, we said:

> "What is the rule in Nebraska?" It appears that Nebraska has already passed upon the question of whether the release of an agent by a third party also releases the principal, and has decided that in the affirmative; but so far as we have been able to ascertain, this court has not directly passed upon the question of the reverse situation, that is to say, whether the release of the principal also releases the agent where the action is predicated upon negligence and the liability of the principal arises under the respondeat superior doctrine.

*Ericksen v. Pearson, supra* at 476, 319 N.W.2d at 81.

We then cited the case of *Dickey v. Meier*, 188 Neb. 420, 197 N.W.2d 385 (1972), in which the court referred to the cases of *Max v. Spaeth*, 349 S.W.2d 1 (Mo. 1961), and *Bacon v. United States*, 321 F.2d 880 (8th Cir. 1963), saying in 211 Neb. at 478, 319 N.W.2d at 82:

> "See, Max v. Spaeth, 349 S.W.2d 1 (Mo.); Bacon v. United States, 321 F.2d 880 (8th Cir.). Both courts held in those cases: 'The master's liability under the doctrine of respondeat superior is based not on his own misdeeds but those of his servant, and therefore, when the servant is not liable, the master for whom he was acting at the time should not be liable. It matters little how the servant was released from liability; as long as he is free from harm, it appears to us that his master should also be held blameless.' "

We then concluded by saying at 478, 319 N.W.2d at 82:

> We are of the opinion that the same rules should be applicable to a release given by a third party to the principal, that is to say, such release should release the agent from any liability, notwithstanding the fact that they are not technically joint tort-feasors. . . . Under the authorities above cited, the general rule is that in the absence of a specific statute, and Nebraska has no such statute, a valid release of either of the parties to the principal-agent relationship releases the other.

Mallettes acknowledge the rule announced in *Ericksen v. Pearson, supra,* but contend that there are significant

differences between the instant case and the facts in *Ericksen v. Pearson*. With that we do not agree. Mallettes argue that the *Ericksen* decision did not involve allegations of affirmative fraud by the defendant. While that may be true, the specific language is to the effect that "such release should release the agent from *any* liability, notwithstanding the fact that they are not technically joint tort-feasors." (Emphasis supplied.) *Ericksen v. Pearson*, 211 Neb. 466, 478, 319 N.W.2d 76, 82 (1982). We further pointed out in *Ericksen* that "the majority view [is] that a valid release of either master or servant from liability for *tort* operates to release the other where liability is based upon the doctrine of respondeat superior . . . ." (Emphasis supplied.) *Id.* at 479, 319 N.W.2d at 82. We did not there limit our holding to negligence actions, but included all tort actions.

Furthermore, the release executed by Vanderlindes and Mallettes was not limited to negligence but, rather, released each the other from "all claims known or unknown, liquidated or unliquidated, and whether arising in tort or contract."

As a second distinguishing factor, Mallettes argue: "In *Erickson* [sic], damages are requested from the defendant and there is no demand for return of money received and retained by the defendant as a result of the defendant's affirmative acts of fraud." Brief for Appellees at 8. There is no allegation that Taylor & Martin retained the $27,737.50 by reason of any alleged acts of fraud. It appears that Mallettes paid Taylor & Martin, as agents for Vanderlindes, $80,000, and settled with Vanderlindes for $52,262.50. While it is true that the difference happens to be $27,737.50, which Vanderlindes paid to Taylor & Martin as a commission, there is no indication that Vanderlindes agreed to pay to Mallettes anything more than $52,262.50. In light of the pleadings, we find no basis to conclude that Mallettes have the right to recover back more than the amount agreed to be paid by the settlement.

Mallettes then contend that the release in *Ericksen* was with the principal for settlement of damages, while in the case at bar the release is to effect a rescission of a contract and an effort " 'as nearly as possible, to place each in the position they would now be in if there had been no purported contract.' " Brief for

Appellees at 8. This appears to us to have made no significant difference. Obviously, the parties to the release agreed that the payment of $52,262.50 was "as nearly as possible" as the parties could get to placing each other in the position each would be in if there had been no purported contract.

Mallettes then argue that in *Ericksen* there was no evidence of duress involved in the release. The claim for duress apparently is based upon the fact that Mr. Mallette was suffering from ill health and was ordered by his physician to settle his claim against Vanderlindes. While, indeed, that may have been a motivating factor, it certainly was not duress as that term is commonly understood in the law. All of us are often compelled to make decisions because of factors we are required to take into account, over which we have no control. That does not constitute duress. See, *Brown v. Pierce*, 74 U.S. (7 Wall.) 205, 19 L. Ed. 134 (1868); *Williams v. Rutherfurd Realty Co.*, 159 A.D. 171, 144 N.Y.S. 357 (1913).

Next, Mallettes argue that in *Ericksen* the plaintiff received payment of damages for the release, while in the instant case no damages were received. We are again unable to see how that could affect the validity or application of the release. There was certainly adequate consideration for the release.

And, finally, Mallettes argue that in *Ericksen* the court found that the liability of the principal who was released arose only from the application of the doctrine of respondeat superior, while in the instant case the purpose of the release was to relieve the plaintiffs from the obligation to Vanderlindes arising by reason of the decree of specific performance. Whatever may have motivated Vanderlindes and Mallettes to ultimately enter into a release is immaterial in the instant case. What is significant is that the parties to the release are releasing each the other from any and all claims arising out of "a contract for the purchase of real estate from Vanderlinde," in which "Taylor & Martin, Inc. . . . was acting as an agent of Vanderlinde at the time." To somehow try to separate these matters into independent transactions is simply without any basis.

We believe that the record clearly establishes that as a matter of law Mallettes released Vanderlindes as principals and, therefore, as a matter of law, at the same time released Taylor &

Martin as agent. The release having been executed, there was nothing to submit to the jury, and, therefore, the motion for summary judgment made by Taylor & Martin should have been granted. For these reasons the verdict of the jury is set aside, and the action is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

BOSLAUGH, J., dissenting.

The majority relies on the rule announced in *Ericksen v. Pearson*, 211 Neb. 466, 319 N.W.2d 76 (1982). The rule in that case provides that where liability is based upon the doctrine of respondeat superior, "a valid release of either of the parties to the principal-agent relationship releases the other." *Id*. at 478, 319 N.W.2d at 82.

The rule is illogical in the context of a third party's release of the principal, and should not be applied in this case. As stated in *Hill v. McDonald*, 442 A.2d 133, 138 n.5 (D.C. 1982):

> Certainly, as a matter of logic, it is hard to see how a *principal* could still be held vicariously liable after the release of its *agent*, the only real wrongdoer. But the converse is not at all obvious. It is thus that a growing minority of courts hold that the release of a principal does not bar suit against the agent for the underlying tort unless the release is so intended. [Citations omitted.]

The original and primary justification behind the rule adopted in *Ericksen, supra,* was the desire to prevent unjust enrichment of the injured party, rather than consideration of the relationship between those with potential liability to the injured party. *Clark v. Brooks*, 377 A.2d 365 (Del. Super. 1977), *aff'd sub nom. Blackshear v. Clark*, 391 A.2d 747 (Del. 1978). The *Brooks* court indicated that the rule should not apply in situations such as that in the present case:

> Since the liability of the employer in such cases [where the sole basis of liability of an employer is the negligence of an employee] is dependent upon at least a showing of tort on the part of the employee, it is understandable that some courts have held that where no liability exists on the part of the employee there cannot be liability on the part of

the employer and hence they have extended this reasoning to apply to a release of the employee's liability by the injured person. [As in *Dickey v. Meier*, 188 Neb. 420, 197 N.W.2d 385 (1972).] However, rationally the converse does not apply. The employee's liability for his own negligence is not dependent on negligence of the employer nor is the employee entitled to reimbursement by the employer. The ability to sue the employee who committed the tort is not contingent on the ability to sue the employer. Based upon the relationship of the parties no justification exists for extending nonliability of the employer to benefit the employee unless that benefit was created by contract intended to benefit the employee. Hence, the liability of the negligent employee should not be affected by a transaction between the injured party and the employer unless the parties intended the benefit to extend to the employee. The result should not, of course, permit dual recovery by the injured person.

*Clark v. Brooks, supra* at 371-72.

The *Ericksen* court cited the case of *Dickey v. Meier*, 188 Neb. 420, 197 N.W.2d 385 (1972), as support for the rule that release of either of the parties to the principal-agent relationship releases the other. In that case, the court held that a valid release of the employee-agent releases the employer-principal from liability, where the tort action is based exclusively on the alleged negligence of an employee or agent. In so holding, the court indicated that where a master's liability is based upon the doctrine of respondeat superior, the master should be held blameless, where the servant whose misdeeds gave rise to the suit has been released from liability. As previously noted, this view is consistent with those expressed in *Clark v. Brooks, supra*, and does not suggest that the release of the principal alleged to be liable exclusively on the theory of respondeat superior should serve to release the agent, regardless of the parties' intentions. See Busick, *Pleading and Procedural Considerations in Nebraska in Subrogation, Contribution, and Indemnity Actions*, 19 Creighton L. Rev. 278 (1986). Instead, the decision in *Dickey v. Meier, supra*, suggests that the release of the primarily liable agent should serve to release the

secondarily liable principal, because the latter's liability is merely vicarious. Such considerations are not involved where the person who is secondarily liable is released.

Further, the cases cited in support of the rule announced in *Ericksen v. Pearson*, 211 Neb. 466, 319 N.W.2d 76 (1982), do not provide strong support for the rule, because they either did not consider the effect of releasing the principal or did not support the proposition for which they were cited. See, e.g., *Spradley v. McCrackin*, 505 S.W.2d 955 (Tex. Civ. App. 1974), *disapproved, Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805 (Tex. 1980); *Smith v. Lincoln*, 52 Misc. 2d 66, 275 N.Y.S.2d 74 (1966). Thus, the rule expressed in *Ericksen v. Pearson* is illogical and should not provide the basis for the decision in this case.

Additionally, if the justification for the rule is to prevent a double recovery or unjust enrichment of the plaintiff, it can hardly be said that those considerations are present in the case at bar. The money sought from Taylor & Martin would do nothing more than place the Mallettes in the position they were in prior to the alleged misrepresentations and the subsequent signing of the contract.

In fact, the pleadings seem to be more in the nature of an action for money had and received than for an action in tort. The former cause is based upon the notion that where one person has money to which in equity and good conscience another is entitled, the law creates a promise by the former to pay it to the latter. *Village of Morrill v. Roosevelt P.P. Dist.*, 215 Neb. 41, 337 N.W.2d 125 (1983).

The fact that the money held by Taylor & Martin was retained as a commission on the sale should not negate such a claim by the Mallettes because, as is noted in the Restatement (Second) of Agency § 339 at 97-98 (1958):

> An agent who has received things from another for a disclosed . . . principal in a transaction conducted by him has a duty to return them or their proceeds if the other rescinds the transaction for a cause existing at the time of their receipt, to the extent that the agent has not, before notice of rescission and in good faith, changed his position.

Comment *f.* to this section indicates that a change in position, such as paying the money over to the principal, is no defense to an action for the return of the money where there has been a fraudulent inducement by either the principal or the agent for the third party to enter into the transaction.

Thus, even if the rule of *Ericksen v. Pearson, supra,* were considered to be sound, it should not apply in this case.

HASTINGS and GRANT, JJ., join in this dissent.