MAXINE SQUIRES, ADMINISTRATOR OF THE ESTATE OF JAMES R. SQUIRES, AND MAXINE SQUIRES, INDIVIDUALLY, APPELLEES, V. IMPLEMENT DEALERS MUTUAL INSURANCE COMPANY, APPELLANT, IMPLEADED WITH ENO INSURANCE AGENCY, INC., ET AL., APPELLEES.

198 N. W. 2d 469

Filed June 9, 1972.   No. 38341.

Nelson, Harding, Marchetti, Leonard & Tate, Kenneth Cobb, and J. S. Berry, for appellant.

George O. Kanouff and Curtis Bromm, for appellees Squires et al.

Clarence A. H. Meyer, Attorney General, and James J. Duggan, for appellees Johns et al.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, and CLINTON, JJ., and BRODKEY, District Judge.

CLINTON, J.

This is an action for a declaratory judgment seeking a determination that a certain automobile liability policy issued to the plaintiffs was in full force and effect on November 19, 1967. The trial judge, a jury having been waived, found the policy was in effect on that date. We affirm the judgment.

The controversy is founded upon the alleged failure of the insureds to pay a premium for a renewal or extension of the term of the policy to cover the 6-month period September 1, 1967, to March 1, 1968. Most of the evidence is not in dispute. Where there is a conflict in the evidence and on the basis of which reasonable minds could arrive at different conclusions of fact, we apply the principle that findings of a court in a law action in which a jury is waived have the effect of a verdict of a jury and will not be disturbed on appeal unless clearly wrong. Pester v. American Family Mut. Ins. Co., 186 Neb. 793, 186 N. W. 2d 711. Where there is such a significant conflict in evidence, we will point it out in the following summary.

The plaintiffs, James R. Squires, now deceased, and his wife, Maxine Squires, had procured from the defendant Implement Dealers Mutual Insurance Company, through the Eno Insurance Agency, Lincoln, Nebraska, an automobile liability policy No. FC 96267, covering two motor vehicles for the period March 1, 1966, to March 1, 1967. The annual premium on this policy

was $70. In February 1967 the company in accordance with its apparent usual practice notified the plaintiffs and its agent, Eno Insurance Agency, of the coming expiration of this policy. This notification included a billing of $70 for the renewal period March 1, 1967, to March 1, 1968; it stated: "Make check payable to company"; and gave the name and address of the insurer. Under date of February 20, 1967, the agency in writing notified plaintiffs: ". . . your auto policy runs out March 1, 1967. If it would be any help you could take it out for six months which cost would be $35.00." Under date of February 21, 1967, plaintiff Maxine Squires wrote to the agency: ". . . We are billed for the second time from the Implement Dealers Mutual Insurance Co; for the amount of $70.00 for 12 months—I am wondering Can we pay it for 6 months?" On February 23, 1967, plaintiff Maxine Squires made a check to the company for the $35 which the company received, although whether directly or through the agency is not clear from the record. The company as a result of payment of this check credited the plaintiffs' account and under date of March 2, 1967, the agency transmitted to plaintiffs automobile liability policy No. FC 99877, which is the policy involved in this action. This policy covered the period March 1, 1967, to September 1, 1967, and shows a premium charge of $35. The policy provided: ". . . this policy may be continued in force for successive policy periods by payment of the required continuation premium to the company on or before the effective date of each successive policy period. If such premium is not paid when due, the policy shall terminate as of that date and such date shall be the end of the policy period. Such premium shall be computed in accordance with the manuals then in use by the company." It is with reference to the renewal period that the controversy arises.

On April 24, 1967, the agency sent to the plaintiffs an "invoice" indentified in the record as exhibit 6. It

contained the following: Renewal date: 9-1-67; policy number: 99877; company: Implement Dealers; property and coverage: *renewal of combination automobile insurance;* premium: $35. An employee of the agency, testifying for the company, testified that the above billing was for the original policy period March 1, 1967, to September 1, 1967, and that they billed the plaintiffs each 10 days for this amount until shortly before September 1, 1967. On August 29, 1967, the agency received from the plaintiffs a $35 payment by postal money order dated August 28, 1967. This payment the agency credited on what it believed to be the past due premium. The witness testified the agency was unaware of the premium payment to the company for the first 6 months. The agency did not notify the company of this $35 payment. It issued a receipt to plaintiffs for the amount and indicated thereon payment on account. However the witness testified it would have been credited "on account" whether or not it was for the renewal period or on a past due account. The witness stated the agency would not have billed the plaintiffs if it had known of the payment to the company.

Plaintiff Maxine Squires testified that when she sent the money order she did so in response to the invoice previously mentioned and identified as exhibit 6. At that time she wrote on the invoice paid August 28, 1967. The agency on August 29, 1967, acknowledged receipt of the payment and said: "We are enclosing the receipt for payment of automobile insurance premium. Thank you very much!!! We appreciate your patronage, and desire to be of service whenever possible." Under date of August 28, 1967, the agency had sent to the plaintiffs a notice "PREMIUM PAST DUE." This notice is identified in the record as exhibit 8. It stated: "Premium due: $35.00 (3-1-67 to 9-1-67)" and identified policy No. FC 99877. It also stated: "The credit period allowed by the Insurance Company for payment of the above premium is now past and we are required to

obtain prompt payment to maintain your policy in force. The renewal on this coverage is now due also, for Sept. 1 inception, and naturally it is impossible to continue coverage unless premium is paid in full." The "invoice" and the above "premium past due" notice are the only documentary evidence of the billings by the agency.

The trial court clearly could reasonably find that exhibit 8 was not received by the plaintiffs until after they made payment pursuant to the billing of exhibit 6, which we think as a matter of law was according to its terms for a renewal of policy No. FC 99877. The trial court was not required to accept as fact that the periodic 10-day billings were in fact made or that they gave notice to the plaintiffs that exhibit 6 was an erroneous billing for which premium was already paid.

Witnesses for the company testified that between July 1, 1967, and August 15, 1967, in the course of the ordinary practice lapse notices were mailed to the plaintiffs, which notices advised of the premium due for the period September 1, 1967, to March 1, 1968. These indicated premium for that period of $40 and directed that payment should be made to the company for that amount. Testimony was introduced to show the renewal premium was in fact $40. The company relies upon the presumption that a letter addressed, stamped, and posted is presumed to have reached the plaintiffs in the normal course of the mails; that since Maxine Squires testified only that she did not remember receiving such notices, the presumption is unrebutted and the fact finding must be that the notice was received. The company cites Corcoran v. Leon's, Inc., 126 Neb. 149, 252 N. W. 819. However, we do not think the case turns upon whether or not the notice was in fact received. The trial court may have assumed it was and we will assume it was. The situation would then be that the plaintiffs had received two notices for renewal premiums due, one, the invoice for $35, and the other,

the lapse notice for $40. The trial court could have found Maxine Squires acted upon the invoice either unaware of or having forgotten the lapse notice and when she paid the $35 premium on August 28, 1967, which was received by the Agency on August 29, 1967, and credited "on account," that was receipted by the company; likewise that the invoice billing was a billing by the company. There is nothing in the record to negative the agency's authority in these respects. Sections 44-328 and 44-329, R. R. S. 1943, are applicable. An insurance agent who solicits an application for insurance is, in a controversy arising between the insured and the company issuing the policy, regarded as representing the company and not the insured. An insurance agent who with authority receives and receipts for money for renewal of an insurance policy is deemed to all intents and purposes an agent of the company. Heikes v. Farm Bureau Ins. Co., 181 Neb. 827, 151 N. W. 2d 336.

The company relies upon the alleged failure of a renewal to take effect because of the claimed failure to pay the renewal premium and also upon certain communications from the agency dated September 1, 1967, and Setpember 21, 1967, which the witnesses for the company testified were mailed on those dates to the plaintiffs. The first of these notices stated: ". . . the payment which we received from you covers insurance from 3-1-67 to Sept. 1, 1967. Automobile insurance is payable in advance, *and we had advanced this for you.* You have been billed directly from the company for the new premium, which is $40.00. This should be sent directly to them, and covers from Sept. 1, 1967 to March 1, 1968. It is important that this be taken care of immediately, to keep coverage in effect. Let us know if we may be of any help." (Emphasis supplied.) If the emphasized statement were true, then the company had been paid $70, the original full year's premium since shortly before or shortly after the is-

suance of policy No. FC 99877. Since the company apparently billed for the renewal premium the statement must mean only that the agency felt itself indebted to the company for that amount. This of course was not in fact true since the plaintiffs had made payment for the period March 1, 1967, to September 1, 1967, before the policy was ever issued. The plaintiffs were not responsible for and cannot be charged with whatever confusion existed between the agency and the company.

The invoice constituted a solicitation and billing for an extension of policy No. FC 99877. The plaintiffs accepted that solicitation on August 28, 1967, by making payment. The renewal contract of insurance then arose subject to the right of the company to cancel the same in accordance with the terms of the policy. It at no time elected to cancel the renewal.

The communication of September 21, 1967, notified the plaintiffs: ". . . your insurance has lapsed for non-payment." This last communication was without legal effect because payment had been made.

On November 19, 1967, the accident occurred which made the coverage important. The agency was notified. The company denied coverage. On December 15, 1967, the agency mailed James Squires a check for $35, accompanied by a letter which contained the following: "I assume that the policy period from March 1, 1967 to September 1, 1967, which was billed out of this office to you was paid for in our office, and also to the Implement Dealers. Therefore, this would make a credit to you of $35.00, which we are including our check for." The check was returned by Maxine Squires to the agency.

The company also argues that even if the $35 paid to the agency on August 28, 1967, is applied to the renewal premium it is not payment in full since the premium was then $40 and the obligation to pay the premium is ordinarily an indivisible obligation to pay the entire premium so that a forfeiture is not prevented

by part payment thereof. The company cites McGarrah v. Stockton (Mo.), 425 S. W. 2d 223. Even if it be assumed the payment was only partial, yet under the circumstances of this case it merely made the policy voidable at the election of the insurers. 2 Long, Law of Liability Insurance, § 7.01 et seq., p. 17-2. The cited case is not applicable for the reason that there the insurer gave notice of cancellation under the terms of the policy. Such is not the case here where the insurer erroneously assumed there was a lapse of the policy because premium had allegedly not been paid. The notice of September 21, 1967, is not the same as a cancellation. Whether or not the policy lapsed would depend upon the underlying fact of whether or not the premium was paid or unpaid. We hold: An erroneous statement by the insurer to the insured that an insurance policy has lapsed for alleged nonpayment of premium is not the legal equivalent of a notice of election to cancel under the terms of the policy. Where an insured because of errors in a billing by the agent of an insurance company pays only that portion of the renewal premium set forth in the billing instead of the entire premium, the renewal policy is not void but is voidable at the election of the company under the terms of the policy.

The trial court properly found that a continuation of policy No. FC 99877 for the 6-month renewal period arose out of the billing by the invoice and payment by plaintiffs on August 28, 1967.

AFFIRMED.