JAMES ERICKSEN, APPELLEE AND CROSS-APPELLANT, V. DEAN C. PEARSON, DOING BUSINESS AS NORTHEAST NEBRASKA INSURANCE AGENCY, AND A. R. BERRY, EMPLOYEE, APPELLANTS AND CROSS-APPELLEES.

319 N.W.2d 76

Filed May 7, 1982. No. 44002.

Vince Kirby, for appellants.

Maurice S. Redmond, Dakota County Attorney, and J. Patrick Ryan, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and BRODKEY, J., Retired.

BRODKEY, J., Retired.

Plaintiff, James Ericksen, brought this negligence action against the defendants, Dean C. Pearson, doing business as Northeast Nebraska Insurance Agency, and A. R. Berry, employee, for failure to procure insurance in the amounts of coverage requested. A jury returned a verdict for the plaintiff, and defendants appeal from that verdict. The plaintiff cross-appeals on the issues of the credit allowed against the verdict and the failure of the court to allow attorney fees.

The facts out of which this case arose are as follows. Plaintiff, James Ericksen, was the owner of a gasoline filling station in Hubbard, Nebraska. In the fall of 1975, Ron Ericksen, the plaintiff's son, entered into negotiations with one A. R. Berry, an agent and employee of Pearson, for the purpose of purchasing various insurance policies from Northeast Nebraska Insurance Agency (Northeast), owned by Dean C. Pearson. As a result of the negotiations, the plaintiff agreed to purchase a fire and extended coverage policy for the filling station.

The filling station was already insured against fire by State Farmers Insurance Company (State Farmers) for $20,000 coverage for the building and $5,000 for the stock and fixtures. Plaintiff was unhappy with the State Farmers policy and planned to cancel coverage under that policy.

After examining the old State Farmers policy given him by plaintiff for the purpose of obtaining the legal description of the real estate, Berry filled out an application to Iowa Mutual Insurance Com-

pany (Iowa Mutual) for fire and extended coverage for the filling station, but only for approximately the same amounts as recited in the State Farmers policy. Ron Ericksen testified that he had requested and Berry had agreed to apply for $50,000 of the coverage for the filling station and $30,000 coverage on the contents.

On November 14, 1975, the filling station was severely damaged in a fire before the Iowa Mutual policy was delivered. The plaintiff's son testified he called Mr. Berry immediately and was assured by him that the Iowa Mutual policy was in force. However, Berry denied he had said the policy was for $80,000. On about November 19, 1975, the plaintiff received a copy of the Iowa Mutual policy and discovered the coverage was listed at $25,000 only.

After the fire, the plaintiff discovered that even though he had called State Farmers to cancel his existing policy, the policy had not been effectively canceled.

The plaintiff then began negotiating a settlement with both insurance companies under each of their respective insurance policies. When the parties were unable to reach any settlement, the plaintiff filed an action on September 3, 1976, against both insurance companies, praying for $25,000 from each of them. On April 1, 1977, the plaintiff amended his petition, adding A. R. Berry and Dean C. Pearson, doing business as Northeast Nebraska Insurance Agency, as defendants. On or about October 31, 1977, the plaintiff settled with State Farmers for $18,000 and later released it from all further claims and causes of action. The release is made part of the record, but was not admitted into evidence because of the possible prejudicial effect of permitting the jury to learn of the amount of the settlement. On July 11, 1978, the plaintiff successfully moved to separately docket his cause of action against the agents, Berry and Pearson, and the principal in-

surer, Iowa Mutual. In his separate petition the plaintiff prayed for damages against the agents in the amount of $78,446.80 and against Iowa Mutual in the same amount, and also prayed for reformation of the insurance policy to reflect $80,000 of coverage. On November 20, 1979, the plaintiff entered into an agreement with Iowa Mutual, releasing it from all further claims and causes of action in consideration of $25,000, the face amount of the policy, which release was testified to but was not admitted in evidence on plaintiff's motion in limine. The case proceeded to trial against Berry and Pearson, doing business as Northeast, then the sole defendants under an amended and separate petition filed by plaintiff, and the jury returned a verdict for the plaintiff in the amount of $60,000. The trial court, sua sponte, reduced the judgment by $50,000, apparently on the basis of the face value of the two policies under which the plaintiff settled.

In their brief on appeal to this court, the defendants have set out 12 separate assignments of error, contending that the court erred (1) in allowing the plaintiff to file separate petitions against Iowa Mutual and these defendants; (2) in overruling defendants' demurrer as amended, based upon the contention that the statute of limitations had run against this action; (3) in failing to sustain defendants' motion for summary judgment; (4) in setting aside its order dismissing the petition of the plaintiff for failure to produce certain requested documents; (5) in sustaining plaintiff's oral motion in limine restricting the defense from mentioning settlement with State Farmers and Iowa Mutual; (6) in allowing the testimony of a certain witness with regard to damages; (7) in admitting into evidence exhibit 5; (8) in overruling defendants' motion to dismiss or, in the alternative, for a directed verdict at the end of plaintiff's case in chief; (9) in giving instruction Nos. 2, 3, 4, 6, 7, 8, 9, 10, and 11 to the jury; (10) in

overruling defendants' motion to dismiss or, in the alternative, for a directed verdict after all evidence was adduced; (11) in overruling defendants' motion for judgment notwithstanding the verdict; and (12) in overruling defendants' motion for a new trial.

While it appears that at least some of the foregoing assignments of error are possibly meritorious, we believe that it is possible to completely dispose of this appeal on the ground that the settlement of the plaintiff with Iowa Mutual, and plaintiff's release given to Iowa Mutual, had the effect of also releasing the defendants in this appeal, absolving them from all liability to the plaintiff for any negligence on their part in failing to obtain the proper insurance coverage and in failing to provide Iowa Mutual with the proper and correct information to be included in the policy issued to the plaintiff by Iowa Mutual.

This case was tried and submitted to the jury on the amended and separate petition filed by the plaintiff on September 10, 1980, the second amended answer to that petition filed by the defendants on October 30, 1980, and the reply of the plaintiff to defendants' amended answer. As previously stated, the amended and separate petition against the defendants Pearson and Berry is based upon allegations of negligence alone. After setting out the background facts previously recited, the plaintiff alleges specific acts of negligence on the part of the defendants and alleges that as a direct and proximate result of their failure to provide the plaintiff with the coverage which Berry assured him he had, the plaintiff was damaged in the amount set forth in the petition. In defendants' second amended answer to plaintiff's petition, they set out numerous defenses to the allegations contained therein, and further specifically state: ''Further answering and as an affirmative defense to the Amended and Separate Petition filed herein by the plaintiff, defendants allege that the de-

fendants herein are and were at all times material hereto the duly authorized agent of Iowa Mutual Insurance Company and not the agents of the insured plaintiff; that consequently the acts of the defendants are the acts of the Iowa Mutual Insurance Company; that because of the aforesaid principal-agent relationship the dismissal of the principal is the dismissal of the agent; that the settlement, dismissal and release of the principal, Iowa Mutual Insurance Company, amounted to a settlement, dismissal and release of the defendants." They also allege as a defense: "That in his Separate Petition filed against the said Iowa Mutual Insurance Company plaintiff alleges that said litigation against Iowa Mutual Insurance Company arose 'due to the defendant's failure to provide the plaintiff with the amounts of coverage originally applied for and which plaintiff was assured existed' and 'that as a direct and proximate result of defendant Iowa Mutual Insurance Company's failure to provide plaintiff with the coverage which its agents and employees assured him he had, the plaintiff has been damaged in the sum of $78,446.80.' "

In his instruction No. 11 given to the jury at the conclusion of the trial, the district judge stated as follows: "The Court has determined as a matter of law the truth of the foregoing propositions and you must accept them as true:

"(1) That at all times material Ronald Ericksen was the agent of James Ericksen.

"(2) That at all times material the Defendant A. R. Berry was an employee of Dean C. Pearson, d/b/a Northeast Nebraska Insurance Agency and was acting in the scope of his employment.

"(3) That at all times material Dean C. Pearson, d/b/a Northeast Nebraska Insurance Agency, was an agent for the Iowa Mutual Insurance Company.

"(4) That on or about November 14, 1975, a fire oc-

curred on the Plaintiff's property in Hubbard, Nebraska."

We have carefully reviewed the record in this case and believe that the aforesaid conclusions of the trial court are supported by the evidence. We believe it is clear that at all times material to this case Berry was acting as agent and employee to Pearson, and that the relationship between Pearson and Iowa Mutual was that of agent and principal. This is particularly true under the Nebraska statutes and authorities. Neb. Rev. Stat. § 44-328 (Reissue 1978) provides as follows: "Any person, firm or corporation in this state who shall with authority receive or receipt for any money on account of, or for any contract of insurance made by him or them, or for any such insurance company or individual aforesaid, or who shall with authority receive or receipt for money from other persons to be transmitted to any such company or individual for a policy or policies of insurance, or any renewal thereof, although such policy or policies of insurance may not be signed by him or them, as agent or agents of such company, *or who shall in any wise make or cause to be made any contract or contracts of insurance for or on account of such company, shall be deemed to all intents and purposes an agent or agents of such company.*" (Emphasis supplied.) Also, Neb. Rev. Stat. § 44-329 (Reissue 1978) provides: "Every agent or broker who shall solicit an application for insurance of any kind shall, in any controversy between the insured or his beneficiary and the company issuing any policy upon such application, be regarded as representing the company and not the insured." In this connection, see *Squires v. Implement Dealers Mut. Ins. Co.,* 188 Neb. 590, 198 N.W.2d 469 (1972); *Heikes v. Farm Bureau Ins. Co.,* 181 Neb. 827, 151 N.W.2d 336 (1967); *Krug Park Amusement Co. v. New York Underwriters Ins. Co.,* 129 Neb. 239, 261 N.W. 364

(1935); *State Ins. Co. v. Jordan,* 29 Neb. 514, 45 N.W. 792 (1890).

We now comment upon the releases themselves as revealed by the record in this case. Exhibit 11 was a release given by the plaintiff to State Farmers in settlement of his claim. Exhibit 12 is the release given by the plaintiff to Iowa Mutual. Both of these releases appear in the record but were not admitted in evidence by order of the court, in response to a motion in limine filed by the plaintiff, on the ground that the settlement amounts recited in the respective releases might be prejudicial and influence the minds of the jurors. Notwithstanding, testimony was received with respect to both exhibits. We quote the testimony of James Ericksen, the plaintiff, with regard to exhibit 12: "Q. I show you what is Exhibit No. 12, do you recognize that document, sir? A. It looks like an insurance company document. I signed it, yes. Q. Did you sign that on the 20th day of November, 1979? A. It says the 20th of November, 1979, yes. It looks like I did, yes. Q. Did you sign that again under oath before Maurice Redmond [one of plaintiff's attorneys]? A. I signed it before Maurice Redmond, yes. Q. Did you read and understand the terms of that document, sir, at the time you signed it? A. I imagine, yes. I imagine I did. Q. Exhibit No. 12 is entitled a Release, is that correct? A. That's what it says, Release. Q. Does it also say--- MR. RYAN [plaintiff's other attorney]: Your Honor, for the same reason objected to on the last document, counsel has marked [and] not admitted into evidence by the Court's ruling; I object to counsel's reading or attempting to read any part of this other than inquiring as to the witness's signature and that he signed the document. Counsel is attempting by his actions to get the content of this in before he's made an offer into evidence. THE COURT: Mr. Ryan, the reason the Court would not allow the exhibit is it does state

an amount in dollars and cents. In other respects, the document is admissible. I will allow the witness to proceed and if you wish to refer to the document then offer it into evidence. . . . Q. This is between the Iowa Mutual Insurance Company, a Corporation, is that correct? A. Yes. Q. And James Ericksen, is that correct? A. Yes. Q. It's an agreement between you and the Iowa State Mutual Insurance Company? A. I would say, yes, that's what it is. Q. Is it true that by virtue of this document you do hereby release, acquit, and forever discharge, said Iowa Mutual Insurance Company of any and all claims and demands, actions or causes of action, damages or claims for damages, both known and unknown growing out of the damage to the real and personal property, all as more specifically set forth herein before, is that what that provides? A. Down to here, that's what it says. Q. And that further does hereby release, acquit, and forever discharge Iowa Mutual Insurance Company of any liability whatsoever under or upon said policy, is that correct? A. Correct." The release was thereafter offered in evidence but the offer was denied by the court.

The only reference to the settlements made by the plaintiff with the two insurance companies that appears in the court's instructions to the jury is contained in instruction No. 9, which reads as follows: "In this case the Plaintiff has made settlement with State Farmers Insurance Company and Iowa Mutual Insurance Company. The amounts of the settlements have been disclosed to the Court but not to the jury.

"If you should find under the Court's instructions that the Plaintiff is entitled to recover against the Defendants, Dean C. Pearson, d/b/a Northeast Nebraska Insurance Agency, and A. R. Berry, an employee, then you shall award damages to the Plaintiff for the same amount you would have awarded

if no such settlements had been made." This instruction was specifically objected to at the instruction conference by counsel for both the plaintiff and the defendants.

From what we have stated above it appears that at least two things are clearly established: (1) That a principal and agent relationship existed between the defendants to this action and Iowa Mutual Insurance Company; and (2) That Iowa Mutual Insurance Company did settle its dispute with the plaintiff and received a release of liability upon such settlement. The question to be decided, therefore, is as to the effect of such settlement upon any claims the plaintiff may have had against Pearson and Berry. The court did not instruct the jury on this aspect of the case.

The general rule is stated in 76 C.J.S. *Release* § 50 at 689 (1952) as follows: "In a situation where several persons are not actively joint tort-feasors, but one person commits the tort and is primarily liable while the liability of the other person is derivative or secondary, as where it arises under the doctrine of respondeat superior, the releasor's acceptance of satisfaction from one, discharges the other as well, as in the case of master and servant or principal and agent; and it has been held that this is true despite an attempted reservation of rights against the person secondarily liable, since if the rule were otherwise, such person would be liable without having recourse against the person primarily liable, the latter having been released . . . ."

Also, in an annotation entitled "Release of (or covenant not to sue) master or principal as affecting liability of servant or agent for tort, or vice versa," appearing in 92 A.L.R.2d 533 et seq. (1963), the author of that annotation, after analyzing the pertinent cases, states in his summary at 537 the following: "Most of the cases decided in the absence of a specific statute support the view that a valid release of

one of the parties to the master-servant or principal-agent relationship releases the other." The same author also states at 540: "Although based upon different theories, and although in some instances the basis of the decision does not appear or is not stated clearly, the following cases support the view that where the liability of a master or principal for a tort committed by his servant or agent is predicated solely upon the doctrine of respondeat superior, a valid release of either of the parties in such relationship operates to release the other." Following the above citation, the author lists cases from 14 jurisdictions supporting that view. In 53 Am. Jur. 2d *Master and Servant* § 408 (1970), the rule is stated at 416 as follows: "Although it is generally recognized that where the liability of a master for a tort of his servant is based solely on the doctrine of respondeat superior, the master and the servant are not joint tortfeasors, it is nevertheless the general rule that in such a case a valid release of either of the parties operates to release the other. The decisions so holding usually do so upon the theory that the damages recoverable for the tort are entire and not severable, or the theory that the injured person is entitled to receive but one compensation for his injury."

We then must ask: "What is the rule in Nebraska?" It appears that Nebraska has already passed upon the question of whether the release of an agent by a third party also releases the principal, and has decided that in the affirmative; but so far as we have been able to ascertain, this court has not directly passed upon the question of the reverse situation, that is to say, whether the release of the principal also releases the agent where the action is predicated upon negligence and the liability of the principal arises under the respondeat superior doctrine.

In *Dickey v. Meier,* 188 Neb. 420, 197 N.W.2d 385 (1972), in an opinion by McCown, J., this court held

that in a tort action based exclusively on the alleged negligence of an employee or agent, a valid release of that employee-agent releases the employer or principal from liability, even though the release specifically reserves all claims against the employer-principal. In that case, this court stated at 422-24, 197 N.W.2d at 387-88: "The plaintiff contends that under the circumstances here Matthew Meier and Katherine Meier were joint tort-feasors, and that in such a situation release and discharge of one joint tort-feasor on settlement and payment of damages is not a defense to an action against another unless it was agreed between the parties to the settlement that such payment was in full satisfaction of all damages suffered. . . .

"The critical factor, however, is that Matthew Meier and Katherine Meier were not joint tort-feasors under the facts here. [Cases cited.] In each of these cases it is apparent that the employer could have been guilty of independent negligence. None of them fit the situation involved here where the liability of the employer-principal arises only by virtue of the doctrine of respondeat superior, and not through any independent negligence of the employer-principal. The employer-principal here was not a joint tort-feasor in the technical sense. Her liability was purely derivative, stemming from the sole negligence of the employee-agent, and resting upon the employer-principal only because of the doctrine of respondeat superior.

"Courts generally have not made this distinction or have followed rules applicable to true joint tort-feasors even though recognizing the distinction. See Annotation, Release of (or covenant not to sue) master or principal as affecting liability of servant or agent for tort, or vice versa, 92 A.L.R.2d 533, at page 536 et seq.

. . . .

"Consideration of the many and divergent legal principles and the practical problems in multiplicity

of litigation and in determining whether satisfaction was full or only partial, all lead us to the view adopted by most courts which have considered the issue. See Annotation, 20 A.L.R.2d 1044. We hold that in a tort action based exclusively on the alleged negligence of an employee or agent, a valid release of that employee-agent releases the employer or principal from liability, even though the release specifically reserves all claims against the employer-principal. See, Max v. Spaeth, 349 S.W.2d 1 (Mo.); Bacon v. United States, 321 F.2d 880 (8th Cir.). Both courts held in those cases: 'The master's liability under the doctrine of respondeat superior is based not on his own misdeeds but those of his servant, and therefore, when the servant is not liable, the master for whom he was acting at the time should not be liable. It matters little how the servant was released from liability; as long as he is free from harm, it appears to us that his master should also be held blameless.' ''

We are of the opinion that the same rules should be applicable to a release given by a third party to the principal, that is to say, such release should release the agent from any liability, notwithstanding the fact that they are not technically joint tortfeasors. We believe it is clear from the record that Iowa Mutual's liability in this case arises, if at all, from the application of the doctrine of respondeat superior. The record does not reveal any independent negligence on the part of Iowa Mutual. It issued the policy which the application received from its agent requested. Its failure to include the coverage desired by the plaintiff was due, we believe, to the failure of the agent to supply the required information to the principal. Under the authorities above cited, the general rule is that in the absence of a specific statute, and Nebraska has no such statute, a valid release of either of the parties to the principal-agent relationship releases the other. In support of

the majority view that a valid release of either master or servant from liability for tort operates to release the other where liability is based upon the doctrine of respondeat superior, we cite *Geib v. Slater,* 320 Mich. 316, 31 N.W.2d 65 (1948); *Drinkard v. William Pulte, Inc.,* 48 Mich. App. 67, 210 N.W.2d 137 (1973); *Lackey v. Brooks, Adm'r,* 204 Va. 428, 132 S.E.2d 461 (1963); *Mayfair Fabrics v. Henley, et al.,* 101 N.J. Super. 363, 244 A.2d 344 (1968); *Mid-Continent Pipeline Co. v. Crauthers,* 267 P.2d 568 (Okla. 1954); *Spradley v. McCrackin,* 505 S.W.2d 955 (Tex. Civ. App. 1974); *Smith v. Lincoln,* 52 Misc. 2d 66, 275 N.Y.S. 2d 74 (1966). A case factually similar to the facts of the instant case is *Lippert v. Bailey,* 241 Cal. App. 2d 376, 50 Cal. Rptr. 478 (1966), which was an action against insurance agents to recover for fire loss on the basis of the agents' failure to obtain specified amounts of insurance protection. From a judgment of the Superior Court of Orange County in favor of the agents, the insureds appealed. The District Court of Appeal held that the negligent invasion of the insureds' contractual right by insurance agents' failure to obtain adequate insurance was, by virtue of their agency relationship to the insurer, attributable to agents' principal and that the release of all claims against the insurer extinguished insureds' sole primary right, with reservation of right to proceed against agents in release given being a nullity.

Our conclusion, therefore, is that the release of Iowa Mutual by the plaintiff herein operated to release the liability of the agents, the defendants herein, also; that the court obviously applied the incorrect law in the trial of this case; and, as a matter of fact, since all the pertinent evidence was before the court in the hearing on defendants' motion for summary judgment, such motion should have been sustained.

In view of what we have stated above, we conclude

that the judgment of the District Court was incorrect, and that such judgment must be reversed.

REVERSED AND DISMISSED.